**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

| | |
|---|---|
| **ANITA F. ADAMS, individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No.**    3:20-cv-143 |
| **v.** | **JURY TRIAL DEMANDED** |
| **AZTAR INDIANA GAMING COMPANY, LLC d/b/a TROPICANA EVANSVILLE,** | |
| **Defendant.** | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Anita F. Adams ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class and Collective Action Complaint against Aztar Indiana Gaming Company, LLC d/b/a Tropicana Evansville ("Defendant"), and hereby states and alleges as follows:

**INTRODUCTION**

1.      Plaintiff and all other similarly situated employees work or worked for Defendant, a casino located in Evansville, Indiana.

2.      Pursuant to its casino-wide policies and procedures, Defendant failed to pay Plaintiff, and other similarly situated employees, the mandated federal minimum wage rate for all hours worked and overtime for all hours worked over 40 in a single workweek.

3.      First, Defendant's time-clock rounding policy, procedure, and practice is used in such a manner that it results, over a period of time, in the failure to compensate its employees properly for all time worked, resulting in minimum wage and overtime violations.  Second, Defendant failed to properly inform its tipped employees of the required tip credit provisions prior to paying a sub-minimum direct cash wage and, as a result, Defendant may not claim a tip

credit.  Third, Defendant miscalculated its tipped employees' regular rate of pay for overtime purposes by paying 1.5 the direct cash wage (as opposed to the full minimum wage), which results in unpaid overtime compensation.  Fourth, Defendant also made improper deductions from its employees' paychecks for gaming license fees and other deductions which reduced its employees' compensation below the required federal minimum wage and, in some situations, overtime rate under federal law for all hours worked.

4.      Defendant's systemic violation of federal and state wage laws was willful.

5.      Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit as: (a) a collective action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, *et seq*., to recover unpaid minimum and overtime wages owed to Plaintiff and all other similarly situated workers employed by Defendant; and (b) a Rule 23 class action under Indiana state law, including the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq*., and the Indiana Wage Deductions Statute ("IWDS"), I.C. § 22-2-6-1, *et seq*.

## JURISDICTION AND VENUE

6.      Federal question jurisdiction over the FLSA claims of Plaintiff and all others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      Supplemental jurisdiction over the state law claims of Plaintiff and all others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case or controversy.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

9.      Plaintiff is a resident of Evansville, Indiana (Vanderburgh County).

10.     From approximately March 2012 through the present, Plaintiff has been employed by Defendant at its casino property located at 421 NW Riverside Drive, Evansville, Indiana 47708.  During her employment, Plaintiff has worked as a Table Games Dealer, which is a tipped, hourly, non-exempt position.  Plaintiff's Consent to Be a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

11.     Defendant is a limited liability company organized under the laws of the State of Indiana.  Defendant is registered to do business and does conduct business in the State of Indiana.  Specifically, Defendant operates a casino property located in Evansville, Indiana.

12.     At all relevant times, Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

13.     At all relevant times, Defendant was the employer of Plaintiff, and all other similarly situated employees.

14.     At all times relevant to this action, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

15.     Plaintiff and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendant within the respective limitations periods.

## <u>OVERVIEW OF PLAINTIFF'S CLAIMS</u>

### <u>Unlawful Rounding Violations</u>

16.     Plaintiff re-alleges the allegations set forth above.

17.     Defendant utilizes a computerized system which tracks the exact time (by the minute) an hourly employee clocks in and clocks out of work.

18.     Even though Defendant maintains a system which records, to the minute, the time an employee clocks in and clocks out, Defendant utilizes a rounding system in computing payroll which rounds to the closest 15-minute interval.

19.     For example, an employee who clocks in between 7:53 a.m. and 8:07 a.m. will be treated by Defendant's payroll computations as having clocked in at 8:00 a.m.

20.     Defendant utilizes the same rounding system for clock outs.

21.     For example, an employee who clocks out between 5:08 p.m. and 5:22 p.m. will be treated by Defendant's payroll computations as having clocked out at 5:15 p.m.

22.     Viewed in a vacuum, the rounding system utilized by Defendant appears to neither favor Defendant nor its employees as Defendant utilizes the same rounding system when an employee clocks in or out.

23.     However, Defendant utilizes an attendance and/or disciplinary policy to alter the seemingly neutral rounding system in a manner which transforms Defendant's rounding system into a system that is substantially rigged in Defendant's favor.

24.     Pursuant to Defendant's policies, Plaintiff and all similarly situated employees are required to clock in and commence work approximately 7 minutes before the start of their shift.

25.     Pursuant to Defendant's policies, Plaintiff and all similarly situated employees are subject to discipline if they clock in after the start of their shift.

26.     Pursuant to Defendant's policies, Plaintiff and all similarly situated employees may only clock out when authorized by their supervisor.

27.     As a result of Defendant's policies, Plaintiff and all similarly situated employees typically clock in and begin working 7 minutes prior to the start of their shift.

28.     As a result of Defendant's policies, Plaintiff and all similarly situated employees do not typically clock in after the start of their shift, because if they do, they are subject to discipline.

29.     Per Defendant's rounding system, none of the pre-shift work (up to 7 minutes per day) is paid as Defendant rounds this time to the next 15-minute interval, the employees' official start time.

30.     Accordingly, at the start of an employee's shift, Defendant's rounding system is rigged in favor of Defendant because Defendant utilizes its attendance and/or disciplinary policies to ensure that, most of the time, the rounding which occurs at the start of the shift decreases the amount of compensable time Defendant pays its employees.

31.     Moreover, Plaintiff and all similarly situated employees, at the end of the day, are required to clock out no more than 7 minutes after the end of their shift.

32.     Plaintiff and all similarly situated employees do not typically leave work early; instead, they routinely leave work and clock out between the end of their shift and 7 minutes thereafter.  This makes sense because it is solely Defendant's decision as to when Plaintiff and all similarly situated employees are permitted to leave their workstations.  Because of this, Plaintiff and all similarly situated employees are unable to take advantage of the rounding system because they cannot decide to leave prior to the conclusion of their shift.

33.     Accordingly, at the end of an employee's shift, Defendant's rounding system is rigged in favor of Defendant because the rounding which occurs at the end of their shift decreases the amount of compensable time Defendant pays its employees.

34.     In sum, Defendant's time-clock rounding policy, procedure, and practice is used in such a manner that it results, over a period of time, in the failure to compensate its employees properly for all the time they have actually worked, including overtime wages.

35.     Defendant has no good faith basis to use such a rigged rounding system as its time clocks record the actual clock in and clock out times to at least a one-minute accuracy. Defendant has complete knowledge of all hours worked by Plaintiff and all similarly situated employees.

36.     Defendant's failure to pay this unpaid time has resulted in Plaintiff and all similarly situated employees being regularly denied proper compensation under the FLSA and Indiana state law.

37.     Plaintiff and all similarly situated employees, in conformance with Defendant's clock-in and clock-out policies, and attendance and/or disciplinary policies, regularly clocked in and commenced work several minutes before the start of their shifts.

38.     Throughout Plaintiff's employment as a Table Games Dealer, she was paid a sub-minimum direct cash wage for every hour worked.  Thus, during each workweek in which Defendant did not pay her for all hours worked due to its time-clock rounding policy, Plaintiff's regular rate of pay fell below the requisite federal minimum wage ($7.25/hour).  Because the amount Plaintiff was paid during each of those workweeks divided by the number of hours she actually worked resulted in an amount less than the statutory requirement, Defendant violated the federal minimum wage requirements.

39.     During those workweeks and others, Defendant's time-clock rounding policy caused Plaintiff and all similarly situated employees' wages to fall below the requisite federal minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over 40 in a single workweek).

### Entitlement to the Tip Credit – Failure to Give Notice

40.     An employer may, in certain circumstances, take a "tip credit" toward its minimum wage obligations for tipped employees.  Pursuant to the explicit language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m)(2).

41.     The Department of Labor's interpreting regulations concerning Section 3(m) provide as follows:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

42.     Defendant employs Plaintiff and other similarly situated tipped employees by paying a sub-minimum direct cash wage but failed to properly notify them of the tip credit requirements of the FLSA.

43.     Specifically, Plaintiff and other similarly situated tipped employees are not informed, in advance of Defendant's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

44.     As Defendant has failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions, Defendant has willfully violated federal law by failing and refusing to pay all minimum wages due and owing.

**Miscalculated Regular Rate for Tipped Employees**

45.     The FLSA requires that employees receive overtime pay at a rate not less than one and one-half times the regular rate at which they are employed for all hours worked over 40 in a single workweek.

46.     The FLSA permits an employer to take a "tip credit" toward its minimum wage obligations for tipped employees equal to the difference between the required cash wage (which must be at least $2.13 under federal law) and the applicable federal or state minimum wage.

47.     However, where the employer takes the tip credit, overtime is calculated on the full minimum wage, not the sub-minimum direct hourly wage payment.  The employer may not take a larger tip credit for an overtime hour than for a straight time hour.

48.     In addition, "where a higher minimum wage than that set in the [FLSA] is applicable to an employee by virtue of … other legislation, the regular rate of the employee … cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' … must be construed to mean the regular rate at which he is lawfully employed."  29 C.F.R. § 778.5.

49.     Federal regulations provide that "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer … Any tips received by the employee in excess of the tip credit need not be included in the regular rate."  29 C.F.R. § 531.60.

50.     In calculating Plaintiff's and other similarly situated employees' overtime pay, Defendant first subtracted the tip credit from the prevailing federal or state minimum wage.  In other words, Defendant calculated the overtime rate by multiplying one and one-half times the sub-minimum direct cash wage being earned.  As a result, Plaintiff's and other similarly situated employees' overtime pay was not based on the proper regular rate of pay.

51.     For example, on her paycheck dated January 31, 2020 (pay date), Defendant paid a direct cash wage of $5.63 per hour to Plaintiff.  During that pay period, Plaintiff received an overtime direct cash wage of $8.4450 per hour, for 0.25 hours of overtime worked.  In violation of the FLSA, Defendant calculated the overtime rate on the sub-minimum direct cash wage payment, and not on the full minimum wage.  Defendant calculated the overtime rate by multiplying Plaintiff's subminimum direct cash wage of $5.63 by one and one-half ($8.4450).  Plaintiff's proper overtime rate should have been $10.875 per hour ($7.25 per hour times one and

one-half) if Defendant was not entitled to utilize a tip credit (which Plaintiff asserts is not applicable given the failure to comply with Section 3(m) of the FLSA), or $9.255 per hour ($10.875 per hour minus a tip credit of $1.62) if Defendant was entitled to utilize a tip credit (which Plaintiff contests and is Defendant's burden to prove).  Either way, Plaintiff's overtime pay was not based on the proper regular rate of pay.

52.     In doing so, Defendant failed to pay Plaintiff and all other similarly situated employees the proper overtime pay as required under federal law.

### Improper Payroll Deductions from Employees' Paychecks

53.     Defendant has established a uniform gaming license deduction policy that governs all employees at its casino.

54.     Under this policy, Defendant deducts from its employees' wages the amount it costs Defendant to initially obtain and thereafter renew the employees' state-issued gaming licenses.

55.     With respect to the FLSA, Defendant may only deduct these gaming license costs from its employees' wages if the costs are primarily for the benefit of employees.  However, Defendant's employees' state-issued gaming licenses are primarily for the benefit or convenience of Defendant.  Defendant's casinos exist in a heavily regulated environment. For example, Defendant can only have table games in its casino if they are operated by employees (table games dealers) who have the required state-issued gaming license. These state-issued gaming licenses are specifically required for the employee's performance of the employer's particular business. Without these state licensed employees, Defendant could not compliantly operate its casinos and, in turn, generate the revenues needed to support its operations and realize profits.  Also, courts interpreting the requirements of 29 C.F.R. § 531.35 ("Free and clear"

payment; "kickbacks") and 29 C.F.R. § 531.32 ("Other facilities")  have drawn a line between costs arising from employment itself and those arising in the ordinary course of life. Costs that "primarily benefit the employee" are universally ordinary living expenses that one would incur in the course of life outside the workplace. Occupational licensing costs—like the state-issued gaming license at issue here—arise out of employment rather than the ordinary course of life. To that end, Plaintiff and other similarly situated employees have no use for their gaming license in the ordinary course of life outside the workplace.  Therefore, Defendant's employees' state-issued gaming license primarily benefits the employer, not the employee, and cannot be deducted from their wages where, as here, it plainly creates a minimum wage violation.

56.     Given that Defendant's gaming license deductions primarily benefit Defendant (as opposed to Plaintiff and similarly situated employees), Defendant may not deduct the gaming license costs from employees' wages to the extent they create a minimum wage violation under the FLSA.

**57.**     For Defendant's many employees, like Plaintiff, who are paid a direct cash wage of $7.25 per hour (the federally required minimum wage) or less, which include, among others, Defendant's tipped employees (like Plaintiff) for whom Defendant pay a sub-minimum direct cash wage and claim an FLSA section 3(m) tip credit, this gaming license deduction is unlawful because it necessarily reduces the employee's earnings below the required minimum wage or overtime compensation in the workweeks in which Defendant makes the deduction, resulting in violations of the FLSA.

58.     As the Department of Labor has explained, when an employer claims an FLSA section 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take

deductions because any such deduction reduces the tipped employee's wages below the minimum wage.

59.     This is not the first time a federal district court has considered the applicability of the FLSA to the common casino industry practice of deducting the costs of obtaining and renewing gaming licenses from employees' wages in the context of minimum wage violations.

60.     In *Lockett v. Pinnacle Entertainment, Inc.*, 408 F. Supp. 3d 1043 (W.D. Mo. 2019), Judge Fenner found "[t]he necessity of a gaming license arises out of employment, and therefore, it primarily benefits Defendant, as employer.  Accordingly, the FLSA prohibits the deduction of any cost or fee for the gaming license." *Id*. at 1049.  In *Lockett*, the Court likewise found that, because the named plaintiffs were tipped employees earning a direct cash wage of $7.24 or less, any deduction necessarily created a minimum wage violation. *Id*. at 1048-49.

61.     In *Lilley v. IOC-Kansas City, Inc.*, 2019 WL 5847841 (W.D. Mo. Nov. 7, 2019), this Court found "considering Plaintiffs' factual allegations in the context of the DOL regulations and caselaw, the gaming license fee is a cost arising from employment and not arising in the ordinary course of life.  Plaintiffs have satisfied their burden at this early stage in the litigation to plead facts that would support the conclusion that the gaming license fee primarily benefits Defendant and, therefore, may not be deducted from wages to the extent the fee brings an employee's pay below the minimum wage required by the FLSA and [Missouri Minimum Wage Law]." *Id*. at *3.

62.     Likewise, the Department of Labor announced in November 2018 that it had completed an investigation and concluded that an Indiana casino operator's deductions made from employees' wages to cover its costs for individual employee's casino gaming licenses created minimum wage violations when those deductions brought the employee's pay below the

federal minimum wage of $7.25 per hour.  In that case, the casino operator was required to pay $175,128 in back wages and damages to 889 employees at its casinos.

63.     Pursuant to 29 U.S.C. § 216(b), "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." As Defendant violated the FLSA's minimum wage and/or overtime compensation provisions through an illegal gaming license deduction, Plaintiff and all others similarly situated are entitled to recover their unpaid minimum wages or overtime compensation, along with an additional equal amount as liquidated damages.

64.     Defendant's FLSA violations alleged herein were willful in that Defendant either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether its conduct violated the FLSA.  For example, this Defendant has been aware of the decisions in *Lockett* and *Lilley* holding gaming licenses are primarily for the benefit of the employer and may not be deducted where it creates a minimum wage violation since the decisions were issued and has continued to deduct the cost of gaming licenses from its employees' wages since that opinion was issued.  Further, Defendant has also intentionally or recklessly ignored case law from the Southern District of New York issued in 2013 that expressly holds that occupational licensing costs are primarily for the benefit of the employer and, therefore, cannot be deducted from an employee's wages if the deduction reduces the employee's earnings below the required minimum wage or overtime compensation. *See Williams v. Secure Resource Communication Corp*., 2013 WL 4828578 (S.D.N.Y. Sept. 10, 2013).

Likewise, Defendant has been aware of the Department of Labor's enforcement action against Indiana casinos for this same FLSA violation and has continued to deduct the cost of gaming licenses from its employees' wages.

65.     Throughout Plaintiff's employment as a Table Games Dealer, she was paid a sub-minimum base wage for every hour worked.  Thus, during each workweek in which Defendant made a deduction to her wages to cover such costs for her gaming license, Plaintiff's regular rate of pay fell below the requisite federal minimum wage ($7.25 per hour) and the requisite Indiana state minimum wage ($7.25 per hour).  Because the amount Plaintiff was paid during each of those workweeks divided by the number of hours she actually worked resulted in an amount less than the statutory requirement, Defendant violated the minimum wage requirements.

66.     For instance, Defendant deducted a gaming license fee in the amount of $50.00 from Plaintiff's wages during the pay period dated April 12, 2019.  During this pay period, Plaintiff was paid a direct cash wage of $5.63 per hour.  For purposes of the FLSA, Defendant claimed a tip credit only to bridge the gap between Plaintiff's direct cash wage of $5.63 per hour and the federal minimum wage of $7.25 per hour.  Further, as discussed above, Plaintiff contests Defendant's ability to claim a tip credit.  Under these circumstances and for purposes of the FLSA, any deduction from Plaintiff's wages, including the unlawful gaming license deductions at issue, violated the FLSA because they necessarily reduced her wages below the federal minimum wage for each hour worked.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

67.     Plaintiff re-alleges the allegations set forth above.

68.     Plaintiff brings Count I, the FLSA claim arising out of Defendant's unlawful time-clock rounding policy, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

### FLSA Time-Clock Rounding Collective

All persons employed by Defendant in an hourly position during the relevant period.

At present, the relevant period includes the three-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present.  The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

69.     Plaintiff brings Count II, the FLSA claim arising out of Defendant's tip credit notification policy, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

### FLSA Unlawful Tip Credit Collective

All persons employed by Defendant during the relevant period and paid a direct cash wage of less than $7.25 per hour.

At present, the relevant period includes the three-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present.  The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

70.     Plaintiff brings Count III, the FLSA claim arising out of Defendant's regular rate calculation policy resulting in unpaid overtime wages, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

### FLSA Miscalculated Regular Rate Collective

All persons employed by Defendant and paid a direct cash wage of less than $7.25 who worked more than 40 hours in any workweek during the relevant period.

At present, the relevant period includes the three-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present.  The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

71.     Plaintiff brings Count IV, the FLSA claim arising out of Defendant's gaming license deduction policy, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves individually and the following collective action class:

### FLSA Gaming License Deduction Policy Collective

All persons employed by Defendant who had the cost of obtaining, renewing, or otherwise maintaining a gaming license deducted from their wages which brought their wages below $7.25 per hour in a workweek during the relevant period.

At present, the relevant period includes the three-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present.  The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

72.     Plaintiff's FLSA claims (Counts I-IV) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

73.     Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendant's above-described FLSA violations.  The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from

Defendant's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

74.     Plaintiff brings Count V, the IWPS claim arising out of Defendant's unlawful time-clock rounding policy, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

**IWPS Time-Clock Rounding Policy Class**

All persons employed by Defendant in an hourly position during the relevant period.

At present, the relevant period includes the two-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present.  The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

75.     Plaintiff brings Count VI, the IWDS claim arising out of Defendant's gaming license deduction policy, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

**IWDS Gaming License Deduction Policy Class**

All persons employed by Defendant who had the cost of obtaining, renewing, or otherwise maintaining a gaming license deducted from their wages during the relevant period.

At present, the relevant period includes the two-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present.  The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

76.     Plaintiff's Indiana state law claims (Count V and VI) described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

77.     These classes each number in the hundreds, if not thousands, of persons.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

78.     There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members.  The questions of law and fact common to the classes arising from Defendant's actions include, without limitation, the following:

      a.     Whether Defendant violated the IWPS when it failed to pay Plaintiff and class members for all hours worked due to the rounding system;

      b.     Whether Defendant had policies and practices of failing to compensate Plaintiff and class members for all time worked through the use of a timeclock rounding system;

      c.     Whether Defendant violated the IWDS when it deducted gaming license fees from employee paychecks; and

      d.     Whether Defendant acted in good faith.

79.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

80.    Plaintiff's claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful practices as Plaintiff.

81.    A class action is the superior method for the fair and efficient adjudication of Plaintiff's claims.  Defendant has acted or refused to act on grounds generally applicable to the classes.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

82.    Plaintiff is an adequate representative because she is a member of each of the classes she seeks to represent, and her interests do not conflict with the interests of the members of those classes.  The interests of the members of the classes will be fairly and adequately protected by Plaintiff and her undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

83.    Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## ALLEGATIONS APPLICABLE TO ALL FLSA CLAIMS (COUNTS I-IV)

84.     At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

85.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

86.     Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

87.     During all relevant times to this action, Defendant was the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

88.     During all times relevant to this action, Plaintiff and all similarly situated employees were Defendant's "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

89.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

90.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a).

91.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

92.     Plaintiff and all similarly situated employees are victims of uniform and compensation policies.

93.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

94.     Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

95.     As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## ALLEGATIONS APPLICABLE TO THE IWPS & IWDS CLAIMS (COUNTS V and VI)

96.     At all times relevant, Plaintiff and the class members have been entitled to the rights, protections, and benefits provided under the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq.*, and the Indiana Wage Deductions Statute ("IWDS"), I.C. § 22-2-6-1, *et seq*.

97.     During all times relevant to this action, Defendant was the "employer" of Plaintiff and the class members within the meaning of the IWPS and IWDS, or otherwise subject to their statutory provisions.  I.C. § 22-2-5-1(a); I.C. § 22-2-6-1(b).

98.     During all times relevant to this action, Plaintiff and the class members were Defendant's "employees" within the meaning of the IWPS and IWDS.  I.C. § 22-2-5-1(a); I.C. § 22-2-6-1(b).

99.     Pursuant to IWPS, "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee."  I.C. § 22-2-5-1(a).

100.     Pursuant to IWDS: "(a) Any direction given by an employee to an employer to make a deduction from the wages to be earned by said employee, after said direction is given, shall constitute an assignment of the wages of said employee."  I.C. § 22-2-6-1(a).  However, "[a]ny assignment of the wages of an employee is valid only if all of the following conditions are satisfied: (1) The assignment is: (A) in writing; (B) signed by the employee personally; (C) by its terms revocable at any time by the employee upon written notice to the employer;  and (D) agreed to in writing by the employer."  I.C. § 22-2-6-2(a).

101.    Plaintiff and the class members are victims of uniform and employer-based compensation policies in violation of both IWPS and IWDS.

102.    Plaintiff and the Class are entitled to damages equal to the amount of unpaid wages, along with an additional amount equal to two (2) times the amount of wages as liquidated damages, plus reasonable attorney's fees and costs.  I.C. § 22-2-5-2.

## COUNT I - FLSA (Unpaid Overtime & Minimum Wages)

### Arising Out of Defendant's Unlawful Time-Clock Rounding Policy

103.    Plaintiff re-alleges the allegations set forth above.

104.    Defendant violated the FLSA by failing to pay Plaintiff and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

105.    Specifically, as discussed above, Defendant utilizes an unlawful time-clock rounding policy that, when combined with its attendance and/or disciplinary policies, forces employees to work off-the-clock without being paid at the legal and applicable wage rates for both straight and overtime hours.

106.    Defendant's practice was to unlawfully and willfully fail to properly pay its hourly employees for all hours worked.

107.    WHEREFORE, on Count I of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

>    a.    Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

>    b.    Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

c.      Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.      Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.      Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.      Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT II - FLSA (Unpaid Minimum Wages)

**Arising Out of Defendant's Failure to Give Notice of Intent to Claim a Tip Credit**

108.   Plaintiff re-alleges the allegations set forth above.

109.   Defendant violated the FLSA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

110.   Specifically, Defendant paid Plaintiff and others similarly situated below the federal minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the federal minimum wage.

111.   In particular, Plaintiff and other similarly situated tipped employees were not informed, in advance of Defendant's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

24

112.    Defendant failed to comply with the notification requirements set forth within the express language of the FLSA and supporting federal regulations.  29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59(b).

113.    As Defendant has failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit, Defendant have willfully violated state and/or federal law by failing and refusing to pay all minimum wages due and owing to Plaintiff and all other similarly situated employees.

114.    Defendant's practice was to unlawfully and willfully fail to comply with the requirements for its entitlement to a tip credit and therefore, Plaintiff and the similarly situated tipped employees were not properly paid minimum wages pursuant to the FLSA.

115.    WHEREFORE, on Count II of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

    a.    Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

    b.    Award Plaintiff and all similarly situated employees damages for unpaid minimum wages under 29 U.S.C. § 216(b);

    c.    Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

    d.    Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

    e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.      Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT III - FLSA (Unpaid Overtime Wages)

### Arising Out of Defendant's Regular Rate Miscalculation Policy

116.    Plaintiff re-alleges the allegations set forth above.

117.    Defendant violated the FLSA by failing to pay Plaintiff and all other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

118.    Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay.  The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.

119.    Federal regulations provide that "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer … Any tips received by the employee in excess of the tip credit need not be included in the regular rate."  29 C.F.R. § 531.60.

120.    In calculating Plaintiff's and other similarly situated employees' overtime pay, Defendant first subtracted the tip credit from the prevailing federal or state minimum wage.  In other words, Defendant calculated the overtime rate by multiplying one and one-half times the lower direct (or cash) wage being earned.  As a result, Plaintiff's and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the FLSA.

121.    WHEREFORE, on Count III of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and prays this Court:

        a.     Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

        b.     Award Plaintiff and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

        c.     Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

        d.     Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

        e.     Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

        f.     Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT IV - FLSA (Unpaid Overtime & Minimum Wages)

**Arising Out of Defendant's Gaming License Fee Deduction Policy**

122.    Plaintiff re-alleges the allegations set forth above.

123.    Defendant violated the FLSA by making deductions from the wages of Plaintiff and other similarly situated employees for gaming license fees, which reduced their wages below the federally required minimum wage and caused them to be underpaid overtime wages.  These deductions were primarily for the benefit of Defendant and, therefore, cannot constitute a credit toward Defendant's obligation to pay Plaintiff and other similarly situated employees minimum

wage. As a result, Plaintiff and all similarly situated employees were paid below the federal minimum wage during the workweeks in which these deductions were made.

124. Defendant's practice was unlawful and a willful failure to comply with the requirements the FLSA.

125. WHEREFORE, on Count IV of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

> a. Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;
>
> b. Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);
>
> c. Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);
>
> d. Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;
>
> e. Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and
>
> f. Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

**COUNT V – Violation of the Indiana Wage Payment Statute, I.C. § 22-2-5-1, *et seq*.**

**Arising Out of Defendant's Unlawful Time-Clock Rounding Policy**

126. Plaintiff re-alleges the allegations as set forth above.

127. Defendant violated the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq.*, by failing to pay Plaintiff and all other similarly situated employees the amounts due for all wages earned.

128. Specifically, as discussed above, Defendant utilizes an unlawful time-clock rounding policy that, when combined with its attendance and/or disciplinary policies, forces employees to work off-the-clock without being paid all amounts due.

129. Defendant's actions and/or omissions were not in good faith.

130. WHEREFORE, on Count V of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendant and prays this Court:

      a.      Certify the state law claim set forth in Count V above as a class action pursuant to Fed. R. Civ. P. 23;

      b.      Award Plaintiff and the Class damages for the amount of unpaid wages due;

      c.      Award Plaintiff and the Class liquidated damages under I.C. § 22-2-5-2;

      d.      Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

      e.      Award Plaintiff and the Class attorneys' fees and costs as allowed by I.C. § 22-2-5-2; and

      f.      Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

**COUNT VI – Violation of the Indiana Wage Deduction Statute, § 22-2-6-1, *et seq*.**

**Arising Out of Defendant's Gaming License Fee Deduction Policy**

131. Plaintiff re-alleges the allegations as set forth above.

132.    Defendant violated the IWDS, § 22-2-6-1, *et seq.*, by making deductions from the wages of Plaintiff and other similarly situated employees for gaming license fees, which resulted in Defendant failing to pay them the amounts due for all wages earned.

133.    IWDS provides that "[a]ny direction given by an employee to an employer to make a deduction from the wages to be earned by said employee, after direction is given, shall constitute an assignment of the wages of said employee."   I.C. § 22-2-6-1. But such an assignment is valid only if it is (1) in writing; (2) signed by the employee personally; (3) by its terms revocable at any time by the employee upon written notice to the employer; (4) agreed to in writing by the employer; and (5) delivered to the employer within ten days after execution. I.C. § 22-2-6-2(a).

134.    Defendant's deductions for gaming license fees were invalid, because Defendant did not comply with requirements of the IWDS.  As a result, Defendant failed to pay Plaintiff and other similarly situated employees the amounts due.

135.    Defendant's actions and/or omissions were not in good faith.

136.    WHEREFORE, on Count VI of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Defendant and pray this Court:

      a.     Certify the state law claim set forth in Count VI above as a class action pursuant to Fed. R. Civ. P. 23;

      b.     Award Plaintiff and the Class damages for the amount of unpaid wages due;

      c.     Award Plaintiff and the Class liquidated damages under I.C. § 22-2-5-2;

      d.     Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

e.  Award Plaintiff and the Class attorneys' fees and costs as allowed by I.C. § 22-2-5-2; and

f.  Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all issues so triable.

Dated: June 18, 2020

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson, MO Bar No. 43450
*pro hac vice application forthcoming*
Alexander T. Ricke, MO Bar No. 65132
*admitted to practice before the S.D. Ind.*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:   816-714-7100
Facsimile:    816-714-7101
Email:  hanson@stuevesiegel.com
Email:  ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343
*pro hac vice application forthcoming*
Michael J. Rahmberg, MO Bar No. 66979
*pro hac vice application forthcoming*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068
Telephone:   816-781-0002
Facsimile:    816-781-1984
Email:  ryan@mcclellandlawfirm.com
Email:  mrahmberg@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**