UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ANITA F. ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:20-cv-00143-MPB-MJD |
| ) | |
| AZTAR INDIANA GAMING COMPANY, LLC, ) | |
| d/b/a TROPICANA EVANSVILLE, ) | |
| ) | |
| Defendant. ) | |

**FINAL APPROVAL ORDER**

On August 7, 2023, the Court held a Fairness Hearing in this matter, in which it heard a motion for final approval of a settlement of a class and collective action by Plaintiff Anita F. Adams ("Named Plaintiff" or "Class Representative"), on behalf of herself and others similarly situated, and Defendant Aztar Indiana Gaming Company, LLC d/b/a Tropicana Evansville ("Defendant"). The Court has considered Plaintiff's Renewed Unopposed Motion for Final Approval of Class Settlement and Memorandum of Law in Support (Docket No. 147; Docket No. 148), Plaintiff's Renewed Unopposed Motion for Attorneys' Fees and Expenses to Class Counsel and Service Award to Named Plaintiff (Docket No. 149; Docket No. 150), the Objection to Notice of Proposed Settlement of Class and Collective Action filed by Ms. Salli Rackley (Docket No. 145), the Objection to Settlement to Class Action also filed by Ms. Rackley (Docket No. 146), Plaintiff's Response to the Objections (Docket No. 151), other related materials submitted by the parties, and the hearing arguments. At the hearing, Ms. Adams was present and represented by counsel, Alexander Ricke and Ryan L. McClelland; Defendant Aztar Indiana Gaming Company, LLC, d/b/a Tropicana Evansville was present by counsel Amanda E. Colvin; and Ms. Rackley appeared on her own behalf. (Docket No. 145; Docket No. 146). The Court

1

Reporter was Amy Hooten. For the reasons discussed on the record and set forth below, the Court **OVERRULES** Ms. Rackley's objections, but orders she be considered and participate in the settlement as a member of the table games dealer time clock rounding class. The Court further **GRANTS** both motions.[1]

## I.    Background

Anita Adams works as a table games dealer at the Tropicana Evansville casino. On June 18, 2020, she sued on behalf of herself and similarly situated employees, alleging that Tropicana violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Indiana Wage Payment Statute ("IWPS"), Ind. Code §§ 22-2-5-1 *et seq.*

On September 22, 2021, the Court entered an Order denying Tropicana's motion to dismiss five counts of Plaintiff's First Amended Complaint. (Docket No. 76). On February 25, 2022, the Court granted Ms. Adams's motion for conditional and class certification—conditionally certifying four collectives under the FLSA and certifying three classes over Rule 23. (Docket No. 80). Tropicana sought appeal of the Court's order granting class certification under Rule 23(f) with the Seventh Circuit Court of Appeals, but the request was denied. (Docket No. 88); (Docket No. 148-1, "Ricke Decl." ¶ 10).

On May 2, 2022, the Court approved the parties' proposed notice plan, which, notably consisted of a bifurcated notice between Rule 23 classes and FLSA collections. (Docket No. 148 at ECF p. 17).

On February 24, 2023, following extensive discovery, motion practice, and arms-length negotiations, the Court granted the parties' Joint Motion for Preliminary Approval of Class

---

[1] Ms. Adams's Unopposed Motion for Final Approval of Class Action Settlement (Docket No. 136) and Unopposed Motion for Attorneys' Fees and Expenses to Class Counsel and Service Award Named to Plaintiff (Docket No. 138) are **DENIED as moot**.

Action Settlement. (Docket No. 126). The Settlement Agreement provides for the creation of a $2,100,000 common fund to pay class members, the cost of notice and settlement administration ($24,256), a $10,000 service award to Ms. Adams, a $5,000 reserve fund to correct any errors or omissions, a $700,000 (one-third of common fund) attorneys' fee award, and litigation expenses of $24,141.94. (Docket No. 122-1, "Settlement Agreement" ¶¶ 21, 47; Ricke Decl. ¶ 26). The Court preliminarily found that the terms of the Settlement Agreement are "fair, reasonable, and adequate." (Docket No. 126 at ECF pp. 5–9). The Court also approved the form of notice proposed by the parties and the procedure by which notice would be given. (*Id.* at ECF pp. 10–11).

The Court preliminarily certified for settlement purposes the three settlement classes and one settlement collective of employees at Tropicana, consistent with those previously certified in the February 25, 2022, Order. (Docket No. 80; Docket No. 126). The Settlement contemplates the same Settlement Classes and collectives, which were defined as:

> **Tip Credit Notice Class**: All hourly, non-exempt employees of Tropicana who were paid a direct hourly wage that was less than $7.25 per hour and for whom a tip credit was claimed at any time from June 18, 2018 to December 31, 2020, and who either: (1) currently work for Tropicana; or (2) voluntarily terminated their employment with Tropicana.
>
> **Timeclock Rounding Class**: All hourly, non-exempt Table Games Dealers of Tropicana who clocked in and clocked out using ADP timekeeping software at any time from June 18, 2018 through June 30, 2021, and who either: (1) currently work for Tropicana; or (2) voluntarily terminated their employment with Tropicana.
>
> **Miscalculated Regular Rate Class**: All hourly, non-exempt employees of Tropicana who were paid a direct hourly wage that was less than $7.25 per hour and worked more than 40 hours in any workweek from June 18, 2018 through April 20, 2022, and who either: (1) currently work for Tropicana; or (2) voluntarily terminated their employment with Tropicana.
>
> **Gaming License Collective**: All hourly, non-exempt employees at Tropicana Evansville who were paid a direct hourly wage equal to a less than $7.25 per hour

and had a gaming license fee deducted from their wages at any time from June 18, 2017 through April 9, 2021, and who filed a Consent to Join form in the Litigation.

(Settlement Agreement ¶¶ 19, 22, 41, and 42).

As the Court confirmed at the August 8, 2023, fairness hearing, no class members requested exclusion and only one class member has filed an objection, addressed below.

## II. Legal Standard

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1987) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)). Any settlement that results in the dismissal of a class action requires court approval. *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

After preliminary review and a hearing, a "district court may approve a settlement of a class action if it concludes that it is fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel*, 877 F.3d 276, 283 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). "[D]istrict courts should act as the 'fiduciary of the class,' subject to the high duty of care that the law requires of fiduciaries." *Id.*

## III. Analysis

### A. Class Certification

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2009), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). "A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . .

4

indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel.*, 457 U.S. at 160–61); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003).

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and any one subsection of Rule 23(b). *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Arreola*, 546 F.3d at 794. In addition, the class must meet two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identify of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

The settlement's existence is relevant to the class-certification analysis. *See Smith v. Sprint Comms. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. V. Windsor*, 521 U.S. 591, 618–20 (1997). "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620). A court may not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.'" *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).

In preliminarily approving the Settlement Agreement, the Court noted that the "reasoning underlying the Court's prior Order granting class certification[,]"is still applicable today. (Docket No. 126 at ECF p. 4–5). That conclusion holds true today. With regards to numerosity, *see* Rule 23(a)(1), the Court notes that the class sizes have shifted since the Court's Entry Granting Plaintiff's Motion for Certification. (*See* Docket No. 80). Then, it was anticipated that the least numerous class was the timeclock rounding class, with 80 to 120 individuals. (Docket No. 80 at

5

ECF p. 17). Today, the least numerous class Ms. Adams proposes is the Miscalculated Regular Rate Class, which is comprised of 248 members. (Ricke Decl. ¶ 24). This is even higher than the previous-least-numerous class. Generally, a class of at least 40 members will suffice. *Gentry v. Floyd Ct.*, 313 F.R.D. 72, 77 (S.D. Ind. 2016). Likewise, the Tip Credit Notice Class and the Timeclock Rounding Class are both sufficiently numerous, with 263 and 332 members.

With regards to adequacy, *see* Rule 23(a)(4), Ms. Adams remains an adequate class representative in that she (1) has a sufficient stake in the outcome, (2) does not have antagonistic or conflicting claims with other class members, and (3) her counsel is experienced, qualified, and generally able to conduct the litigation, particularly given counsels' experience in wage and hour class actions against casinos. For these reasons and the reasons explained in the February 25, 2022, Entry the Court finds that the Settlement Classes satisfy the requirements of Fed. R. Civ. P. 23(a) for purposes of settlement of this Litigation.

### B. Appointment of Class Counsel

Rule 23(g) governs the framework for appointing class counsel for a certified class. It sets forth four criteria: (1) "the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class's interests. Fed. R. Civ. P. 23(g)(1)(B).

The Court previously found George A. Hanson and Alexander T. Ricke of Stueve Siegel Hanson LLP and Ryan L. McClelland of McClelland Law Firm, P.C. as adequate representatives. (*See* Docket No. 80 at ECF p. 21); *see also Bartakovits v. Wind Creek Bethlehem*

*LLC*, 2022 WL 702300, at *3 (E.D. Penn. Mar. 7, 2022) (finding that Stueve Siegel Hanson and McClelland Law Firm are "uniquely skilled and efficient in prosecuting casino wage and hour cases"). Further, Class counsel achieved a favorable result in this action; has been appointed as class counsel in wage and hour class actions many times (Ricke Decl. ¶¶ 37–42); has specific knowledge of wage and hour class actions against casinos; and took this action on a contingent fee bases, with no guarantee of compensation.

### C. Final Settlement Approval

The Court may approve the settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided by the settlement is adequate, and (4) the proposal treats class members equitably relative to each other.

Courts also consider the following five factors: (1) the strength of the plaintiffs' case compared to the amount of the defendants' settlement offer; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the opinion of experienced counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

The Court previously applied both the Rule 23(e)(2) factors and the other factors when granting the preliminary settlement approval. (Docket No. 126 at ECF pp. 5–9). It briefly revisits the factors to confirm the fairness, reasonableness, and adequacy, which warrant final approval.

### 1. Adequacy of representation of the class

As explained above, Ms. Adams and Class Counsel have adequately represented the Class. This factor focuses "on the actual performance of counsel acting on behalf of the class."

Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018). Here, Class Counsel achieved an excellent recovery on behalf of the classes and collective—a common fund representing more than make-whole relief of the unpaid wages at issue in this case. (Ricke Decl. ¶ 31). This factor weighs in favor of final approval.

### 2. Arm's length negotiation

The Settlement Agreement was negotiated at arm's length. As Ms. Adams explained in detail, the Settlement Agreement is product of years of litigation. (*See* Docket No. 148 at ECF pp. 14–19). Furthermore, agreement was reached after a robust negotiation, that ultimately resulted in a double-blind mediator's proposal independently accepted by both parties. (Ricke Decl. ¶ 16). This factor weighs in favor of final approval.

### 3. Adequacy of relief

The $2,100,000 in relief is adequate. Rule 23(e)(2)(C) requires the Court, when assessing adequacy, to consider: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class; (3) the terms of any proposed award of attorney's fees, including time of payment; and (4) any agreement required to be identified under Rule 23(e)(3).

First, using Tropicana's casino-wide wage and hour data, Class Counsel calculated class-wide tip credit damages of approximately $1,157,711.24, class-wide timeclock rounding damages of approximately $41,237.44, class-wide miscalculated regular rate damages of approximately $5,000, and collective-wide gaming license deduction damages of approximately $78,951.89, totaling approximately $1,282,900.57 of actual damages for all claims during the relevant period. The $2,100,000 common fund represents over 160% of the actual unpaid wages alleged in this case. (Ricke Decl. ¶ 31). Moreover, continued litigation is not without great risks

and additional costs. Ms. Adams recognizes Tropicana is not without defenses that it could raise at summary judgment or in seeking class and collective decertification, or—if Ms. Adams did prevail at trial—on appeal. (Docket No. 148 at ECF pp. 29–30).

Second, class members are not required to file claim forms to receive a settlement payment. Instead, class members will be sent a check for their settlement amount. (Settlement Agreement at ¶ 66). Every individual covered by the settlement received an individualized notice form that explains the settlement and specifies his or her anticipated settlement payment and the allocation plan. (*Id.*).

Third, Class Counsel have petitioned the Court for an award of attorneys' fees of one-third (33.33%) of the common fund ($700,000) plus reasonable expenses of $24,141.94. Those fees and expenses are reasonable given the portion of the settlement fund that they represent and the extensive litigation that this case has required over the years. *See Kaufman*, 877 F.3d at 287–88. Moreover, the amount is in line with that awarded by courts in the Southern District of Indiana and around the Seventh Circuit. (Docket No. 148 at ECF p. 31, n. 7 (collecting cases)). No class member has specifically objected to the requested award of attorneys" fees or expenses.

Fourth, this Settlement Agreement is the only agreement between the parties. In sum, the adequacy factor weighs in favor of final approval.

4. **Equitable treatment of class members**

The Settlement Agreement contemplates an allocation formula that recognizes the differences between the classes and collective regardless of the significant overlap in class membership. The $2,100,000 common fund will be allocated, less costs described above, 90% to the Tip Credit Notice Class, 3% to the Timeclock Rounding Class, 1% to the Miscalculated Regular Rate Class, and 6% to the Gaming License Collective, which is proportional to the

9

damages attributable to each group and each claim. (Ricke Decl. ¶ 27; Settlement Agreement ¶ 43). And, within each class and collective, members will receive their *pro rata* portion of the allocation based on their individual damage figure compared to the total damage amount.

### 5. Strength of Ms. Adams's case compared to Tropicana's offer

"The most important settlement-approval factor is 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs.*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). The total consideration represents over 160% of the actual unpaid wages, with a better result only achieved through victory at trial. This factor weighs in favor of settlement.

### 6. Likely complexity, length, and expense of continued litigation

This factors weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement. Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended, as well as expose it to the inherent risk of continued litigation.

### 7. Opposition to the Settlement Agreement

As confirmed at the fairness hearing, only one individual of the 372 unique employees objected to the Settle Agreement. No individual requested to be excluded.

The sole objector, Ms. Rackley, filed two written objections, on May 16 and June 12, 2023. (Docket Nos. 145 and 146). Ms. Rackley also appeared at the fairness hearing and was given time to address the Court and Counsel regarding her objections. Ms. Rackley's objections spoke to a number of issues. First, she objects that she did not receive a settlement allocation as a class member. Second, she criticizes the settlement because it allocates larger settlement payments to workers paid pursuant to the tip credit (*i.e.*, workers earning below $7.25 an hour)

versus those who have worked at the casino for longer periods of time and, as a result, earned more than the minimum wage. Third, Ms. Rackley characterizes the settlement website as misleading potential class and collective members about the need to return a Consent to Join form.

Both in her response brief (Docket No. 151) and at the hearing, Ms. Adams and Class Counsel indicate that they have no objection to Ms. Rackley participating in the Settlement as a member of the timeclock rounding class. Class Counsel indicates that they have attempted to determine Ms. Rackley's status as a class or collective member since early May 2023, when she first indicated she had been left out of the settlement in error. (*Id.* at ECF p. 3). Due to Ms. Rackley's work as both a table games dealer and a "dual rate," which works in dual roles as a table games dealer (*i.e.*, lower hourly rate plus tips) and a floor supervisor (*i.e.*, higher hourly rate with no tips), her unique role omitted her from the original class list sent to Class Counsel. Given these details and the parties' consent, the Court orders Ms. Rackley be considered and participate in the settlement as a member of the table games dealer time clock rounding class.[2]

Ms. Rackley's principal objection is that the net settlement fund is allocated primarily to class and collective members with minimum wage claims versus those higher paid class members. Within each class or collective, settlement allocations were made based on hours paid at a tip credit rate, amount of gaming license deductions, shifts worked subject to timeclock rounding, and overtime hours worked at a tip credit rate. *Id.* In other words, the Settlement

---

[2] Ms. Adams and Class Counsel indicate that wage data produced in the case establishes that Ms. Rackley never had a base hourly rate less than $7.25 during the relevant period. As of June 18, 2018 (the start date for each class and collective), Ms. Rackley's base rate for her dealer role was $8.65 per hour and her rate for her floor supervisor role was $21.25 per hour. Thus, Ms. Rackley was not eligible to participate in the Tip Credit Notice Class, the Miscalculated Regular Rate Class, or the Gaming License Collective, all of which are premised on earning a direct cash wage of equal to or less than $7.25 per hour.

Agreement allocates the net fund in proportion to the actual damages associated with each claim (*see* Docket No. 148-1; Ricke Decl. ¶ 27) and then allocates settlement payments within each group to those class or collective members that would have had the most significant damages. This is a fair, reasonable, and adequate allocation among class and collective members. Fed. R. Civ. P. 23(e)(2)(D). It would violate Rule 23 to assign an allocation methodology that provides settlement payments to class members for minimum wage claims that they do not possess at the expense of class members who do possess those minimum wage claims. *Id.*

Ms. Rackley also criticizes the settlement website. She suggests putative opt-ins did not return a Consent to Join form because the settlement website says that class members need not do anything in response to the settlement notice.[3] That statement on the website is correct: class members do not need to do anything in response to the settlement notice to receive their settlement allocations. Class Counsel indicates that the settlement website was updated with this language after the Court entered its preliminary approval order in February 2023 and well after the conclusion of the FLSA opt-in period in the Summer of 2022.[4] (Docket No. 126).

For these reasons, and those on the record, the Court overrules Ms. Rackley's objections.

8. **The opinion of experienced counsel**

This factor weighs heavily in favor of final approval. Counsel for the parties are experienced and competent. Over the past six years, Class Counsel has litigated over 20 wage and hour claims against casino operators and have obtained key rulings relevant to and that have

---

[3] Given Ms. Rackley contends she timely submitted her Consent to Join Form (and Ms. Adams and Class Counsel have no objection to her participation in the Table Games Dealer Timeclock Rounding Class), she does not have standing to advance this position, even if it had merit.
[4] And, in any event, those individuals who did not return a Consent to Join and are not otherwise class members are not releasing claims as part of this settlement.

informed the settlement value in this case. (Docket No. 126 at ECF pp. 8–9). In Class Counsel's opinion, this is an excellent result for class and collective members. (Ricke Decl. ¶¶ 37–42).

**9. The stage of proceedings and the amount of discovery completed**

This final factor also weighs in factor of final approval. The claims presented and settlement demand were developed over years of litigation, with thorough discovery, and extensive mediation efforts.

**D. Class Notice**

When presented with a proposed class settlement, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." 3 Newberg on Class Actions § 8:32 (4th ed. 2010).

The notices sent to the Class members via First Class Mail adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the Settlement was approved, the process available to obtain monetary relief, their right to request exclusion from the Class and pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval. (Grayson Decl.; Ricke Decl.). The Notice Materials also adequately informed the Class Members of the contact information for the Settlement Administrator and Class Counsel.

Of the notices mailed to Class Members, 26 were returned undeliverable. (Grayson Decl. ¶ 14). Of those 26, the Settlement Administrator was able to locate

updated addresses for and remail notices to 9 of those. (*Id.*). In sum, the Class Notice was successfully delivered to 96% of the Settlement Class. The Settlement Administrator also maintained a website with the notice information, as well as an email address and a toll-free hotline to answer questions about the Settlement Agreement. *Id.* (*Id.* ¶¶ 15–22). Other than Ms. Rackley's objections, the Settlement Administrator and counsel for all parties received no objections or opt-outs. (Ricke Decl. ¶ 19; Grayson Decl. ¶ 24). Thus, the Court finds that the Notice Materials provided to the Class Members satisfied the requirements of Fed. R. Civ P. Rule 23(e)(1)(B).

### E. Settlement Collective

The Gaming License Collective has been conditionally certified as a collective action under the FLSA, 29 U.S.C. § 216(b). (Docket No. 80 at ECF p. 14; Docket No. 126 at ECF p. 4). Notice was sent to eligible members of the certified collective, giving them an opportunity to opt-in to this lawsuit. The Court is informed that 157 individuals have opted in.

"Where the parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective action settlement." *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010) (cleaned up) (collecting cases). As explained in the February 25, 2022, Order, Ms. Adams has succeeded in showing that the proposed collective members are similarly situated, based on evidence that as a condition of employment at Tropicana, any worker in a position classified by the Indiana Gaming Commission ("IGC") must apply for and obtain a IGC license, for which Tropicana would deduct the cost of the license from the worker's payroll. (Docket No. 80 at ECF p. 14). These licenses could not be transferred to work at another casino and Tropicana required employees return them at the conclusion of their employment. (*Id.* at ECF pp. 14–15). As this

14

Court previously determined "[w]hether the gaming licenses are ordinary costs one would incur in life outside the workplace is a common question capable of being resolved in one stroke." (*Id.*). The parties now jointly assert that the proposed settlement collective members are similarly situated. The Court agrees and further certifies, for settlement purposes only, the following Settlement Collective pursuant to the Settlement Agreement and 29 U.S.C. § 216(b):

> **Gaming License Collective**: All hourly, non-exempt employees at Tropicana who were paid a direct hourly wage equal to or less than $7.25 per hour and had a gaming license fee deducted from their wages at any time from June 18, 2017 through April 9, 2021, and who filed a Consent to Join the Litigation.

FLSA collective action settlement agreements require judicial approval. "Normally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-cv-01430-LJM, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (internal quotations omitted). For the same reasons that the Court finds the Settlement Agreement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2), the Court likewise finds that the resolution of the FLSA claims represents a fair and reasonable resolution of a *bona fide* dispute.

### IV.   Conclusion

For all these reasons, the reasons in the parties' submissions, and those given at the fairness hearing, Plaintiff's Renewed Unopposed Motion for Final Approval of Class Action Settlement (Docket No. 147) and Renewed Unopposed Motion for Attorneys' Fees and Expenses to Class Counsel and Service Award to Named Plaintiff (Docket No. 149) are **GRANTED**. Plaintiff's original motions requesting the same (Docket No. 136; Docket No. 138) are **DENIED as moot**.

After holding a hearing, the Court **GRANTS FINAL APPROVAL** of the Settlement Agreement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2). Ms. Adams, Tropicana, and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and provisions. The Court further **finds and orders as follows**:

1. Unless otherwise defined herein, all terms used in this Order will have the same meaning as defined in the Settlement Agreement.

2. The Court has jurisdiction over the subject matter of this Litigation pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, including jurisdiction over all members of the Settlement Classes certified by order dated February 25, 2022 (Docket No. 80) and order dated February 23, 2023 (Docket No. 126), and defined on page 3 of this entry.

3. The Court finds that the Settlement Classes satisfy the requirements of Fed. R. Civ. P. 23(a) and are maintainable under Rule 23(b)(3) for purposes of settlement of this Litigation only.

4. The Court confirms the appointments of (a) Named Plaintiff Anita F. Adams as Class Representative of the Settlement Classes, and (b) the law firms of Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as Class Counsel.

5. The Notice of Proposed Settlement of Class and Collective Action ("Proposed Settlement Notice") and the Corrected Notice of Proposed Settlement of Class and Collective Action ("Corrective Notice") satisfied the requirements of Fed. R. Civ. P. Rule 23(e)(1)(B).

6. Pursuant to Fed. R. Civ. P. 23(e)(2), and as explained in this Order, the Settlement Agreement, is fair, reasonable, and adequate, and in the best interest of the Class Members.

7. The Court further certifies, for settlement purposes only, the Gaming License Collective, as defined on page 15, pursuant to the Settlement Agreement and 29 U.S.C. § 216(b).

8. The Court finds that the resolution of the Fair Labor Standards Act claims represents a fair and reasonable resolution of a *bona fide* dispute.

9. The notice and settlement administration costs are approved and shall be paid to the Settlement Administrator from the Qualified Settlement Fund according to the procedures set forth in the Settlement Agreement.

10. The Service Payment, as set forth in the Settlement Agreement, is approved and shall be awarded and paid to Named Plaintiff from the Qualified Settlement Fund according to the procedures set forth in the Settlement Agreement.

11. Class Counsel is awarded one-third of the common fund ($700,000) for attorneys' fees and $24,141.94 for costs and expenses and will receive such payment from the Qualified Settlement Fund according to the procedures set forth in the Settlement Agreement.

12. Class Members and Collective Members shall receive their settlement shares according to the allocation formula and procedures set forth in the Settlement Agreement. Any portion of the Net Settlement Amount that is not claimed by Class Members or Collective Members because those individuals did not timely negotiate their Settlement Checks will be transmitted to the State of Indiana's unclaimed property fund to be held by the State of Indiana for the benefit of the Class Member or Collective Member.

13. The Court notes that no Class Member requested exclusion from the Settlement.

14. The Court orders that all Opt-In Plaintiffs and Collective Members are bound by the terms of the Settlement Agreement and fully release and discharge the Released Federal Claims.

15. The Court has reviewed and considered Ms. Rackley's written objections (Docket No. 145; Docket No. 146), argument at the fairness hearing, and Ms. Adams's response (Docket No. 151). For the reasons stated on the record and in this entry, Ms. Rackley's objections to the

settlement are **OVERRULED**. The Court **FURTHER ORDERS** the parties and the Settlement Administrator treat Ms. Rackley as a Class Member for purposes of the Timeclock Rounding Class.

Judgment consistent with this Order shall now issue by separate entry.

**SO ORDERED**.

Date: 8/11/2023

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Amanda E Colvin
BRYAN CAVE LLP
amanda.colvin@bclplaw.com

George Hanson
STUEVE SEIGEL HANSON LLP
hanson@stuevesiegel.com

Charles B. Jellinek
BRYAN CAVE LEIGHTON PAISNER, LLP
cbjellinek@bclplaw.com

Ryan L. McClelland
MCCLELLAND LAW FIRM, P.C.
ryan@mcclellandlawfirm.com

Michael J. Rahmberg
MCCLELLAND LAW FIRM, P.C.
mrahmberg@mcclellandlawfirm.com

Alexander T. Ricke
STUEVE SIEGEL HANSON LLP
ricke@stuevesiegel.com

Caleb Wagner
Stueve Siegel Hanson LLP
wagner@stuevesiegel.com

William J. Wortel
BRYAN CAVE LLP
bill.wortel@bryancave.com